IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA J. O'HARA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| FIRST COMMONWEALTH | )   2:03cv1961 |
| PROFESSIONAL RESOURCES, INC., | ) |
| t/d/b/a FIRST COMMONWEALTH | ) |
| FINANCIAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court for disposition are Defendant's MOTION FOR SUMMARY JUDGMENT (*Document No. 24*), with brief in support (*Document No. 25*) ("Motion" and "Brief," respectively), and PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 29*) ("Response").  After considering the filings of the parties, the evidence of record and the relevant statutory and case law, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

Background

Plaintiff Lisa J. O'Hara ("O'Hara") began to work for defendant First Commonwealth Professional Resources, Inc. ("FCPR") on October 9, 2000.  Def's Stmt. of Facts at ¶ 1.  O'Hara was subsequently promoted to Vice President and Manager, Organizational Learning.  *Id*. at ¶ 2.  Upon her promotion O'Hara reported to Thaddeus Clements ("Clements"), Senior Vice President of Human Resources, who was instrumental in promoting her.  *Id*. at ¶ 3.

On September 27, 2002, Plaintiff slipped and fell on wet steps as she was leaving work; the fall injured her left leg, ankle and foot.  *Id*. at ¶ 5.  Due to her injuries, Plaintiff was unable to work.  *Id*.  Shortly after her injury occurred, Plaintiff began to receive workers' compensation benefits, which Defendant did not contest.  *Id*. at ¶¶ 6-7.

As a result of the fall and injury, Plaintiff developed Reflex Sympathetic Dystrophy Syndrome ("RSDS"), for which she underwent sympathetic nerve block procedures.  Pltf's Stmt

of Facts at ¶ 10. RSDS "is a chronic, painful, and progressive neurological condition that affects skin, muscles, joints and bones," and "usually develops in an injured limb, such as a broken leg, or following surgery." *Id*. at ¶ 11. The condition "is characterized by various degrees of burning pain, excessive sweating, swelling, and sensitivity to touch," and "[p]ain may begin in one area or limb and then spread to other limbs." *Id*. at ¶ 12. According to Plaintiff's affidavit, her leg is "constantly in pain," is "extremely sensitive to touch and temperature changes," is "generally cold but also develops hot spots," and "chills for no reason." O'Hara aff. at ¶¶ 2-5. RSDS limits Plaintiff's ability to regulate her body temperature, walk, climb, crouch, stoop, bend and kneel, and it limits the amount of time that she can sit and stand during the day. Pltf's Stmt of Facts at ¶ 14. To combat the symptoms of RSDS, Plaintiff takes medication; the medication reduces the symptoms, but does not remove the condition. *Id*. at ¶ 15.

Plaintiff is required by her doctor to wear a brace on her left leg. *Id*. at ¶ 19. When pain prevents her from wearing her brace, Plaintiff uses a cane to walk. *Id*. at ¶ 21. If Plaintiff must go up and down stairs, she must move sideways. *Id*. Additionally, when walking Plaintiff has difficulty judging distance with her foot because it feels like it is not there, which causes her to trip. *Id*. Finally, Plaintiff's ankle is very unstable, cannot be moved independently, and occasionally goes numb. *Id*. at ¶ 20.

Plaintiff initially began treating with Dr. David Bizowski but discontinued treating with him after three months because she felt that her condition was not improving. Def's Stmt. of Facts at ¶ 10. Plaintiff then began treating with Dr. Carl Hasselman. *Id*. On February 24, 2003, Dr. Hasselman released Plaintiff to return to work *with restrictions*; however, Plaintiff was not informed that she was released to return to work until early March. *Id*. at ¶ 13; Pltf's Stmt of Facts at ¶ 47. Specifically, Plaintiff is not to sit for more than eight (8) hours, stand for more than one (1) hour at a time for a total of four (4) hours, or walk for more than thirty (30) minutes at a time for more than two (2) hours a day. Pltf's Stmt of Facts at ¶ 48. Additionally, Dr. Hasselman recommended that Plaintiff not carry any weight, climb stairs, stoop, bend, kneel, crouch or squat. *Id*.

Prior to her return to work, Plaintiff spoke with Sharon Twaddle, Defendant's workers'

compensation liaison in its Human Relations Department, who told her to contact Clements regarding the accommodations that Plaintiff would need to return to work. Pltf's Stmt of Facts at ¶ 50. On March 10, 2003, Plaintiff called Clements to request accommodations. *Id*. at ¶ 51. During their conversation, Plaintiff informed Clements of the specific restrictions set forth by Dr. Hasselman and reviewed the restriction sheet line-by-line. *Id*. at ¶¶ 52-53. Clements responded by asserting that Plaintiff never performed any of the tasks outlined in Dr. Hasselman's restrictions. *Id*. at ¶ 54.[1]

Plaintiff and Clements had another conversation regarding Plaintiff's accommodations the next day. O'Hara dep. at 97. What occurred during the conversation is in dispute. Plaintiff contends that when she broached the subject of accommodations, Clements became angry and reiterated his position that Plaintiff never performed any of the tasks outlined in Dr. Hasselman's restrictions. *Id*. at 98, 100. Plaintiff told Clements that it appeared as if he was having a problem with her disability, and that she would be hanging up the phone shortly. *Id*. at 101-02. After telling Clements that she would be hanging up the phone three times, Plaintiff ended the call. *Id*. at 102-03. The next day, on March 12, 2003, Clements sent Plaintiff a letter informing her that she was terminated as of March 11, 2003 due to disrespectful, uncooperative and unprofessional behavior. Def's Stmt. of Facts at ¶ 29.

O'Hara filed an Amended Complaint in which she has alleged unlawful retaliation,[2] disability discrimination and failure to accommodate,[3] in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., as amended ("ADA"), tortious discharge,[4] and

---

[1] Plaintiff, on the other hand, contends that her position required that she do all of the restricted activities. Pltf's Stmt of Facts at ¶ 55.

[2] Count I.

[3] Count II.

[4] Count III.

violations of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*. ("PHRA").[5] Defendant has moved for summary judgment on all counts of the Amended Complaint.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When the non-moving party's evidence in opposition to a properly

---

[5] Count IV.

supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. However, a party which opposes summary judgment must do more than rest upon mere allegations, suspicions, general denials, and vague statements.

In federal employment discrimination cases, the familiar *McDonnell Douglas*[6] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination; if this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for the employee's treatment. *McDonnell Douglas*, 411 U.S. at 802. If the defendant articulates a legitimate, nondiscriminatory reason for the employee's treatment, then the plaintiff must demonstrate that the defendant's stated reasons were a pretext for discrimination. *Id*. at 804. The *prima facie* case under *McDonnell Douglas* "is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995). The *prima facie* case raises an inference of discrimination because the courts presume that the challenged acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors." *Id*.

## Discussion

A. <u>Unlawful Retaliation in Violation of the ADA and PHRA (Counts I & IV)</u>[7]

In Count I of the Amended Complaint Plaintiff alleges that "Defendant fired O'Hara in retaliation for requesting a reasonable accommodation under the ADA ..." Amended Complaint

---

[6]. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7]. The anti-retaliation provisions found in the ADA and PHRA are not materially different. Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). Therefore, the Court's analysis of Plaintiff's ADA retaliation claim applies with equal force to her PHRA retaliation claim. *See Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375 (3d Cir. 2002).

at ¶ 14.  To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997); *see also Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).[8]

It is clear that Plaintiff's request for accommodations constitutes protected activity, and that Plaintiff suffered an adverse employment action after the request for accommodations.  Moreover, Plaintiff's version of what took place during and after her request for accommodations, when viewed in the light most favorable to her, is sufficient for a fact finder to find a causal connection between her request for accommodations and her termination.  Therefore, the Court finds and rules that Plaintiff has established a *prima facie* case of retaliation under the ADA.  Finally, although Defendant has proffered legitimate, nondiscriminatory reasons for its termination of Plaintiff (*i.e.*, Plaintiff's allegedly disrespectful, uncooperative and unprofessional behavior), the Court finds and rules that Plaintiff has demonstrated genuine issues of material fact, *i.e.*, "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'"  *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994).  For example, despite telling Plaintiff that her employment was terminated due to her allegedly disrespectful, uncooperative and unprofessional behavior, there is evidence that Clements believed that he needed to fire Plaintiff "to get the department functioning the way it needed to function," and there is other evidence which indicates that Plaintiff was fired for "personal reasons."  *See* Pltf's Stmt of Facts at ¶¶ 109-127.  These inconsistencies, as well as others, suffice to create a genuine issue of material fact as to whether Defendant retaliated against Plaintiff.  Therefore, the Court will deny Defendant's Motion for Summary Judgment as to

---

[8].  The burden-shifting framework of *McDonnell Douglas* applies to ADA retaliation claims.  *See Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999).

Plaintiff's ADA and PHRA retaliation claims.

B.    Disability Discrimination and Failure to Accommodate (Counts II & IV)[9]

    1.    Disability Discrimination[10]

Count II of the Amended Complaint alleges that "O'Hara is disabled within the meaning of the [ADA] in that she is substantially limited from performing a major life activity; she has a history of such a disability and Defendant perceives O'Hara as being substantially limited from performing a major life activity." Amended Complaint at ¶ 19. The Amended Complaint also alleges that "Defendant fired O'Hara because of her disability, in violation of 42 U.S.C. § 12112(a)." *Id*. at ¶ 21. A plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA, *i.e.*, a "qualified individual with a disability";[11] (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc*., 134 F.3d 576, 580 (3d Cir. 1998) (*citing Shiring v. Runyon*, 90 F.3d

---

[9]. The Court will analyze Plaintiff's ADA and PHRA disability discrimination and failure to accommodate claims contemporaneously. *See supra* n. 6.

[10]. Although the *McDonnell Douglas* burden-shifting test can apply to certain ADA claims, it does not apply to all claims under the Act. There are two distinct types of claims under the ADA--disparate treatment (disability discrimination) claims and failure to accommodate claims. In the former type of claim, a plaintiff without direct proof of discrimination may use the *McDonnell Douglas* test to meet his burden indirectly. In the latter type of claim, however, the *McDonnell Douglas* test does not apply. If a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability and failed to, the employer has discriminated against him. There is no need for indirect proof or burden-shifting. *Walton v. Mental Health Ass'n of Southeastern Pa.*, No. Civ. A. 96-5682, 1997 WL 717053, at *10 (E.D.Pa. Nov.17, 1997), *aff'd,* 168 F.3d 661 (3d Cir.1999).

[11]. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

827, 831 (3d Cir.1996)).

Defendant argues that Plaintiff's discrimination claim must fail because she does not have a "disability" under the ADA, as defined by 42 U.S.C. § 12102(2). Def's Br. at 8. Under the ADA, a "disability" is:

> (A)  a physical[12] or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B)  a record of such impairment;[13] or
>
> (C)  being regarded as having such impairment.

42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

The ADA does not specifically define "major life activities." However, the EEOC regulations define the term as those activities that are of "central importance to most people's daily lives." 45 C.F.R. § 84.3(j)(2)(ii); *Toyota Motor*, 534 U.S. at 197. This means "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii). The Court of Appeals for the Third Circuit has "held only extremely limiting disabilities - in either short or long-term -- to qualify for protected status under the ADA." *Marinelli v. City of Erie, Pennsyvlania*, 216 F.3d 354, 362 (3d Cir. 2000).

### a. Whether Plaintiff is Actually Disabled?

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), the United States Supreme Court stated that under the ADA:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental

---

[12]. A "physical impairment" is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h).

[13]. Neither party contends that O'Hara is disabled due to "a record of such impairment."

> impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures, still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Id.* at 482-83 (emphasis added).

The Court of Appeals for the Third Circuit has also given direction on whether an impairment "substantially limits" a major life activity: "[An] impairment must not only affect the way in which the plaintiff engaged in [a major life activity] . . . . To the contrary, a plaintiff must establish that the impairment <u>substantially limits</u> the ability to engage in the activity." *Marinelli*, 216 F.3d at 361 (emphasis in original). For example, in *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186-87 (3d Cir. 1999), our appellate court found that a plaintiff who could stand or walk for only fifty minutes at a time was not disabled under the ADA. Similarly, in *Kelly v. Drexel University,* 94 F.3d 102, 108 (3d Cir. 1996), the court of appeals found that a plaintiff who had a hip fracture and noticeable limp, and could not walk more than a mile without stopping, had a "comparatively moderate restriction [ ] on the ability to walk" and, therefore, had no disability.

Plaintiff contends that RSDS substantially limits her ability to walk because she cannot feel her leg, because she is required by her doctor to wear a brace on her left leg, and because she uses a cane to walk. Pltf's Br. at 19-20. It is not disputed that Plaintiff 1) is required by her doctor to wear a brace on her left leg, 2) must use a cane when she cannot wear her brace, 3) must move sideways when negotiating stairs, 4) has difficulty judging distance with her foot because it feels like it is not there, which causes her to trip, and 5) has an unstable ankle which cannot be moved independently, and occasionally goes numb. Pltf's Stmt of Facts at ¶¶ 19-21. Additionally, Plaintiff is not to sit for more than eight (8) hours, stand for more than one (1) hour at a time for a total of four (4) hours, or walk for more than thirty (30) minutes at a time for more than two (2) hours a day, and Plaintiff's doctor recommended that she not carry any weight, climb stairs, stoop, bend, kneel, crouch or squat. *Id*.

Although this issue is a fairly close call, the Court finds and rules that a reasonable fact finder could find that Plaintiff is "substantially limited" in her ability to walk. Plaintiff's ability

to engage in prolonged walking (with a leg brace or a cane) is somewhat more restricted than the plaintiff *Taylor* (30 minute limitation compared to a 50 minute limitation). Moreover, the constant leg pain experienced by Plaintiff and the difficulties with her ankle are, in the Court's view, sufficient to distinguish Plaintiff's ability to walk from *Taylor* and *Kelly*. Therefore, Plaintiff has established *prima facie* evidence of the first element of a claim of disability discrimination, *i.e.*, that she is a "qualified individual with a disability."[14] The Court also finds and rules that a reasonable fact finder could find that the remaining elements of a disability discrimination claim are satisfied, *i.e.*, that Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodations by Defendant, that Plaintiff suffered an otherwise adverse employment decision as a result of discrimination, and that defendant's legitimate, nondiscriminatory reasons for its actions were pretextual. Accordingly, summary judgment on this claim will be denied.

Plaintiff's claim that she is disabled because RSDS substantially limits the major life activity of regulating her body temperature is novel. Neither party has cited case law for the proposition that regulating body temperature is a major life activity, and the Court has been unable to find a decision which definitively resolves the issue. In any event, Defendant's Brief in Support of Motion for Summary Judgment focuses exclusively on whether Plaintiff is disabled in the major life activity of walking, and does not address the issue of Plaintiff's ability to regulate her body temperature. The Court will likewise decline to do so at this juncture.

      b.    <u>Whether Defendant Regarded Plaintiff as Disabled?</u>

In order to be covered under the "regarded as" prong of the ADA, the employer must "regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002). In order to determine whether Defendant regarded Plaintiff as disabled, the Court must consider the information Defendant had regarding Plaintiff's

---

[14] There is no argument or evidence that Plaintiff is not "qualified."

condition and its response to that information. *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002). "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir.1998) (*en banc*). Additionally, the analysis "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of the persons interacting or working with him." *Kelly*, 94 F.3d at 108-09 (stating that the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate ... that the employer regarded the employee as disabled").

The Court finds and rules that a reasonable fact finder could find that Defendant regarded Plaintiff as disabled or otherwise substantially limited in her ability to walk. For example, there is evidence that Clements was generally well-informed of Plaintiff's injury, recovery and physical limitations, that Clements made an effort to accommodate Plaintiff's limited mobility by arranging for a handicapped parking space which was located close to the elevator, and that Clements was initially receptive to Plaintiff's need to take time off of work to attend physical therapy. *See* Clements dep. at 53; O'Hara dep. at 85-86. It may well be that Clements' efforts to accommodate Plaintiff were merely an effort facilitate her recovery, and were not motivated by a belief that she was "disabled" within the meaning of the ADA. However, this issue requires resolution by a fact finder. Therefore, Plaintiff may pursue her disability discrimination claim on the basis that she was regarded as disabled by Defendant. As mentioned above, it is clear to the Court that a reasonable fact finder could find that the remaining elements of a disability discrimination claim are satisfied. Accordingly, the Court will deny summary judgment as to Plaintiff's claim of disability discrimination.

### 2. Failure to Accommodate

Count II of the Amended Complaint also alleges that "Defendant also refused to make reasonable accommodations for O'Hara known (*sic*) disability in violation of 42 U.S.C. § 12112(b)(5)(A)." Amended Complaint at ¶ 22. The ADA prevents an employer from failing to

provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).  To establish a *prima facie* case of failure to accommodate, Plaintiff must prove: (1) she is an individual with a disability under the ADA; (2) she can perform the essential functions of her position with an accommodation, (3) her employer had notice of the alleged disability, and (4) the employer failed to accommodate her.  *Conneen v. MBNA America Bank,* 182 F. Supp. 2d 370, 378-79 (D. Del. 2002).

The Court finds and rules that based upon the evidence of record, a reasonable fact finder could find that Defendant failed to accommodate Plaintiff's perceived disability.  There is *prima facie* evidence that Defendant is either disabled or regarded as disabled, that Plaintiff could perform the essential functions of her position with an accommodation, that Defendant had notice of Plaintiff's alleged disability, and that Defendant terminated her employment rather than provide an accommodation.  Accordingly, summary judgment as to Plaintiff's claims for failure to accommodate will be denied.

C.   Tortious Discharge (Count III)

O'Hara alleges in Count III of her Amended Complaint that she was fired because she attempted to secure workers' compensation benefits.  Amended Complaint at ¶ 26.  In *Shick v. Shirey Lumber*, 716 A.2d 1231, 1232 (1998), the Supreme Court of Pennsylvania held that "an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action for which relief may be granted under the law of this Commonwealth."  *Shick*, 716 A.2d 1231.  Unfortunately, "the Supreme Court did not define the elements necessary to establish a prima facie case of 'retaliation.'"  *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 277 (E.D. Pa. 2000).  In *Landmesser*, the United States District Court for the Eastern District of Pennsylvania predicted that when the Pennsylvania Supreme Court decides the issue, it will "adopt the analysis that is already applied in retaliation cases in the federal employment context."  *Landmesser*, 102 F. Supp. 2d at 277.  Accordingly, the *Landmesser* court held that in order to state a *prima facie* case of workers' compensation

retaliation, there must be evidence that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Id*. at 277-78. This Court also predicts that the Pennsylvania Supreme Court would adopt the analysis that is applied to federal employment discrimination cases.

The Court finds and rules that Plaintiff's claim for workers' compensation retaliation is without merit. There is no evidence of record from which a reasonable fact finder could find that Plaintiff was fired because she attempted to secure workers' compensation benefits. It is undisputed that Plaintiff began to receive workers' compensation benefits shortly after her injury, that Defendant did not contest her claim, and that at the time that Defendant's Motion for Summary Judgment was filed, Plaintiff was still receiving workers' compensation benefits in the amount of $662.00 per week. Def's Stmt. of Facts at ¶¶ 6-9. Additionally, at her deposition Plaintiff was asked what Defendant had done to prevent her from receiving workers' compensation benefits. Pltf's Dep. at 150. Plaintiff replied, "I don't know." *Id*. Therefore, the Court will grant summary judgment in favor of Defendant on Count III of the Amended Complaint.

Conclusion

For the reasons hereinabove stated, the Court will grant Defendant's Motion for Summary Judgment as to Count III and deny the Motion as to Counts I, II and IV. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA J. O'HARA, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| FIRST COMMONWEALTH | ) 2:03cv1961 |
| PROFESSIONAL RESOURCES, INC., | ) |
| t/d/b/a FIRST COMMONWEALTH | ) |
| FINANCIAL CORPORATION, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER OF COURT

AND NOW, this 21st day of November, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's Motion for Summary Judgment (*Document No. 24*) is **GRANTED** as to Count III of Plaintiff's Complaint, but **DENIED** as to Counts I, II and IV.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Samuel J. Cordes, Esquire
      Email: scordes@ocmilaw.com

      Homer L. Walton, Esquire
      Email: hwalton@tuckerlaw.com

      Philip C. Keidel, Esquire
      401 Penn Street, Suite 100
      Reading, PA 19601
      (counsel for movant CNA Insurance Companies)